GARFIELD OLIVER AND RICHARD A. SUTTON v. FRED ERNUL, LUZZIE ERNUL, AND GRACE STAMPS

No. 61

(Filed 20 January 1971)

1. Easements § 2— sufficiency of description

While no particular words are necessary for the grant of an easement, the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements.

2. Easements § 2— grant by deed — insufficiency of description of right-of-way

Purported "Rightaway Deed" is insufficient to grant to plaintiffs a twenty-foot right-of-way over the lands of defendants where the description of the intended easement is vague, indefinite and uncertain, the description contains no beginning and no ending, and the easement is incapable of being located on the ground.

3. Easements § 2— creation by deed — description

In order to create an easement by deed, either by express grant or by reservation, the description thereof must not be so uncertain,

vague and indefinite as to prevent identification with reasonable certainty.

**4. Easements § 2; Boundaries § 10— patent ambiguity in description — void conveyance**

If the ambiguity in the description in a deed is patent, it cannot be removed by parol evidence, and the attempted conveyance or reservation is void for uncertainty.

**5. Easements § 2; Boundaries § 10— patent ambiguity defined**

A patent ambiguity is such an uncertainty appearing on the face of the instrument that the court, reading the language in the light of all the facts and circumstances referred to in the instrument, is unable to derive therefrom the intention of the parties as to what land was to be conveyed.

**6. Dedication § 2— acceptance of dedication**

There was no dedication of a right-of-way easement to the perpetual use of the public where no duly constituted public authority accepted the dedication.

**7. Dedication § 2— acceptance of dedication — permissive use**

An acceptance of dedication cannot be established by permissive use.

**8. Dedication § 1— lots sold with reference to plat — streets and parks — rights of purchasers of lots**

Where lots are sold with reference to a plat or map, and the grantees rely upon the descriptions therein with respect to designated streets and parks, such grantees acquire from the owner the irrevocable right to use the streets and parks so designated and no governmental acceptance is necessary, the basis of this right being *estoppel in pais*.

**9. Dedication § 1; Easements § 3— right-of-way easement by estoppel — sales not made by reference to map or plat**

Purchasers of two land-locked lots did not acquire by estoppel a right-of-way across the remaining property of the seller where the record discloses no map or plat, nor any sale with reference to any preconceived plan or arrangement.

**10. Easements § 3— way of necessity**

A way of necessity arises when one grants a parcel of land surrounded by his other land, or when the grantee has no access to the parcel except over the land retained by the grantor or the land of a stranger.

**11. Easements § 3— way of necessity**

When the enjoyment of one part of an estate is dependent of necessity on some use in the nature of an easement in the other part, and the owner conveys either part without express provision on the subject, the part so dependent carries with it an easement of such necessary use in the other part.

Oliver v. Ernul

**12. Easements § 3— way of necessity — common ownership of both tracts**

While property owners cannot claim a way of necessity over the lands of a stranger to their title, it is not necessary that the person over whose land the way of necessity is sought be the immediate grantor, so long as there was at one time common ownership of both tracts.

**13. Easements § 3— establishment of way of necessity — intent that grantee should have right of access**

To establish the right to use a way of necessity, it is not necessary to show absolute necessity, but it is sufficient to show such physical conditions and such use as would reasonably lead one to believe that the grantor intended that the grantee should have the right of access.

**14. Easements § 3— conveyance of land-locked lots — way of necessity impliedly granted**

When the owners of a tract of land conveyed two land-locked lots from such tract, a way of necessity across the lands retained by the grantors was impliedly granted to the grantees.

**15. Easements § 3— way of necessity — location**

The right to select the location of a way of necessity generally belongs to the owner of the servient estate, provided he exercises the right in a reasonable manner with regard to the convenience and suitability of the way and to the rights and interests of the owner of the dominant estate; however, if at the time the way of necessity was impliedly granted there was in use on the land a way plainly visible and known to the parties, such way will be held to be the location of the way granted unless it is not a reasonable and convenient way for both parties.

Justice MOORE did not participate in the consideration or decision of this case.

Justice SHARP concurring.

Chief Justice BOBBITT joins in concurring opinion.

ON *certiorari* to the Court of Appeals to review its decision reversing the judgment of *Roberts, J.,* at the 15 December 1969 Session, CARTERET District Court.

Civil action to restrain and enjoin defendants from obstructing a right-of-way allegedly owned by plaintiffs over defendants' lands to the public road; and for a mandatory injunction compelling defendants to remove an obstruction from the right-of-way. In the alternative, plaintiffs assert they are entitled to a way of necessity over the lands of defendants.

Plaintiffs alleged and offered evidence tending to show the facts narrated in the following numbered paragraphs:

1. Defendant Fred Ernul acquired as one lot a rectangular shaped tract of land west of the town of Morehead City in Carteret County, more particularly described as Lots 1, 2 and 3 of the Mike Ebron Subdivision, fronting U. S. Highway 70 on the south, the A. & E.C. Railroad on the north, the lands of George Huntley (now Morehead Mobile Homes, Inc.) on the east and the lands of other strangers on the west. On 4 June 1954 Fred Ernul and wife conveyed to M. L. Mansfield, Jr., the northern portion of said tract of land; and on 31 March 1969 the said Mansfield and wife conveyed same to plaintiff Richard A. Sutton and wife Ida. On 4 June 1954 Fred Ernul and wife conveyed to plaintiff Garfield Oliver the center portion of said tract of land. Defendant Fred Ernul retained and now owns the southern portion of said tract which fronts on Highway 70. (The matters stated in this paragraph are admitted by defendants in their answer.)

2. At the time defendant Fred Ernul conveyed the northern and central portions of said tract to M. L. Mansfield and Garfield Oliver in 1954, a small dirt road provided access from U. S. 70 to the otherwise inaccessible Oliver and Mansfield (now Sutton) lots. This dirt road was located on the Fred Ernul property along its eastern edge, except for a small portion of the road which was located across the line on the adjoining property now owned by Morehead Mobile Homes, Inc. Plaintiffs used this road for ingress and egress until 1969 when it was blocked by defendants. This action ensued. Plaintiffs have no other access to their lots from a public road. (This paragraph is denied by defendants.)

3. On 19 December 1964 "Plaintiffs' Exhibit 1" was allegedly executed, acknowledged, and recorded in Book 259, page 386, Carteret County Registry. It reads as follows:

STATE OF NORTH CAROLINA
Carteret County

This Rightaway Deed Made this 19th day of December, A.D. 1964 by and between Garfield Oliver and wife, Grace Oliver; Melvin Mansfield and wife, Edna Mansfield; Fred Ernul and wife, Luzie Ernul,

We, the undersigned, do hereby give, grant, bargain and convey a 20-foot rightaway for public use for now and forevermore—

Described as follows:

In Morehead Township, in the Mansfield Section, lying between A and E.C. Railway on the North Hwy 70 on the South. The Mike Ebron Subdivision Running a Southerly direction Bounded on the East by George Huntley line and on the West, by Fred Ernul, Garfield Oliver and M. L. Mansfield line.

In Testimony Whereof, the said parties of the first part to these presents have hereunto set their hands and seals, the day and year above written.

Witness as to Mark

| | | |
|---|---|---|
| s/ X Garfield Oliver | (Seal) | Sworn To & Before Me |
| s/ Grace Oliver | (Seal) | This 19 Dec. 1964 |
| s/ M. L. Mansfield | (Seal) | s/ Charlie M. Krouse |
| s/ Edna Mansfield | (Seal) | Notary Public |
| s/ Fred Ernul | (Seal) | My Commission Expires |
| s/ Luzzie Ernul | (Seal) | Feb. 28, '66 |
| | | (Seal) |

North Carolina
Carteret County

I, Charlie M. Krouse, Notary Public in and for said State and County, do hereby certify that personally appeared before me this day, December 19th, 1964, and acknowledged the due execution of the foregoing instrument.

Witness my hand and notarial seal this 19 day of Dec., 1964.

s/ Charlie M. Krouse        (Seal)
Notary Public

My commission expires: Feb. 28-1966

NORTH CAROLINA, Carteret County

The foregoing certificate of Charlie M. Krouse of Carteret County is adjudged to be correct. Let the instrument with this certificate be registered.

Witness my hand this (illegible) day of Feb., 1965.

s/ Martha B. James
Deputy Clerk Superior Court

RIGHT OF WAY AGREEMENT
MADE BY

Garfield Oliver and wife, Grace Oliver; Melvin Mansfield and wife, Edna Mansfield; Fred Ernul and wife, Luzie Ernul.

Filed for Registration on the 8th day of Feb., 1965 at 3:25 o'clock P.M., and registered in the office of Register of Deeds for Carteret County, N. C. _____ day of _____ _____, 19_____ at _____ o'clock _____, in Book 259 of Deeds, on page 385.

s/ Odell Merrill
Register of Deeds

M. L. Mansfield
M. City

(Fred Ernul denies the execution of this instrument.)

4. In 1969 Morehead Mobile Homes, Inc., owner of the adjoining property on the east (formerly owned by George Huntley), erected a chain link fence along its western boundary which narrowed somewhat the above mentioned dirt road, but plaintiffs Sutton and Oliver could still pass along the dirt road from their lots to Highway 70. Shortly thereafter, the remaining portion of the dirt road was blocked by a post which was placed in the center of the dirt road at the point where it passes the dwelling house owned by Fred Ernul and occupied by his tenant Grace Stamps. The distance between the house and the fence erected by Morehead Mobile Homes, Inc., is only fifteen feet and access was effectively blocked by the post. For a short time plaintiffs exited across the railroad tracks to the north but damaged their cars in so doing due to the crossties, ditches and other obstacles. They obtained a temporary injunction against Fred Ernul and wife and the tenant Grace Stamps restraining obstruction of the dirt road leading to U. S. 70. This order was continued in effect until the final hearing of the cause.

Upon the trial in district court, motion of defendants for nonsuit at the close of plaintiffs' evidence was allowed, the action dismissed, and the temporary injunction dissolved. Upon appeal to the Court of Appeals the judgment of nonsuit was reversed, that court holding that Plaintiffs' Exhibit 1, although poorly drafted, was sufficient as a deed creating a twenty-foot easement extending from Highway 70 on the south to the railroad

on the north and running adjacent to the eastern line of the land originally owned by Fred Ernul. See 9 N.C. App. 221, 175 S.E. 2d 618. We allowed *certiorari* to review that decision.

*Thomas S. Bennett, Attorney for defendant appellants.*

*Boshamer and Graham, Attorneys for plaintiff appellees.*

HUSKINS, Justice.

Does Plaintiffs' Exhibit 1, the "rightaway deed," expressly grant to plaintiffs a twenty-foot right-of-way over the lands of defendant Fred Ernul? If not, are plaintiffs entitled to a way of necessity over said lands? Answers to these questions are determinative of this controversy.

[1-5]    Even if its execution by Fred Ernul is duly proven, the paperwriting designated Plaintiffs' Exhibit 1 is insufficient to expressly grant an easement. While no particular words are necessary for the grant of an easement, the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements. *Borders v. Yarbrough*, 237 N.C. 540, 75 S.E. 2d 541 (1953) ; *Thompson v. Umberger*, 221, N.C. 178, 19 S.E. 2d 484 (1942) ; 2 Thompson on Real Property (Grimes Ed. 1961) § 332. Although one might conclude that the intended beneficiaries of the abortive easement are the owners of the Oliver and Mansfield tracts, the location of the "20-foot rightaway" on the ground is vague, indefinite and uncertain. The language of the instrument vaguely describes the intended easement in such manner that nothing can be located on the ground. The description contains no beginning and no ending. When an easement is created by deed, either by express grant or by reservation, "the description thereof must not be so uncertain, vague and indefinite as to prevent identification with reasonable certainty. . . . If the description is so vague and indefinite that effect cannot be given the instrument without writing new, material language into it, then it is void and ineffectual either as a grant or as a reservation. . . . The description must either be certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which it refers. . . . If the ambiguity in the description in a deed is patent the attempted conveyance or reservation, as the case may be, is void for uncertainty. And a patent ambiguity is such an uncertainty appearing on the face of the instrument that the court, reading the

language in the light of all the facts and circumstances referred to in the instrument, is unable to derive therefrom the intention of the parties as to what land was to be conveyed. This type of ambiguity cannot be removed by parol evidence since that would necessitate inserting new language into the instrument which under the parol evidence rule is not permitted." *Thompson v. Umberger, supra* (221 N.C. 178, 19 S.E. 2d 484).

[6, 7] Nor was there a dedication to the perpetual use of the public. Even had the paperwriting been sufficient, there was never an acceptance by duly constituted governmental authority. A dedication without acceptance is merely a revocable offer and "is not complete until accepted, and neither burdens nor benefits with attendant duties may be imposed on the public unless in some proper way it has consented to assume them." *Owens v. Elliot,* 258 N.C. 314, 128 S.E. 2d 583 (1962). An acceptance must be made by some competent public authority, and cannot be established by permissive use. *Gault v. Lake Waccamaw,* 200 N.C. 593, 158 S.E. 104 (1931) ; *Chesson v. Jordan,* 224 N.C. 289, 29 S.E. 2d 906 (1944) ; 2 Thompson on Real Property, *supra,* § 372. The record here is devoid of any such acceptance.

[8] The Court of Appeals, relying obliquely upon *Hine v. Blumenthal,* 239 N.C. 537, 80 S.E. 2d 458 (1954), held that, under the circumstances of this case, Plaintiffs' Exhibit 1 created an easement by grant. *Hine* holds only that where lots are sold with reference to a plat or map, and the grantees rely upon the descriptions therein with respect to designated streets and parks, such grantees acquire from the owner the irrevocable right to use the streets and parks so designated, and no governmental acceptance is necessary. The basis of this right is *estoppel in pais,* viz.: it would be fraudulent to allow the owner to resume private control over such streets and parks. See *Rives v. Dudley,* 56 N.C. 126 (1856) ; *Conrad v. Land Co.,* 126 N.C. 776 (1900) ; *Collins v. Land Co.,* 128 N.C. 563 (1901) ; *Lee v. Walker,* 234 N.C. 687, 68 S.E. 2d 664 (1951) ; *Hine v. Blumenthal, supra.* "The reason for the rule is that the grantor, by making such a conveyance of his property, induces the purchasers to believe that the streets and alleys, squares, courts, and parks will be kept open for their use and benefit, and having acted upon the faith of his implied representations, based upon his conduct in platting the land and selling accordingly, he is equitably estopped, as well in reference to the public as to his grantees, from denying the existence of

the easement thus created." *Green v. Miller,* 161 N.C. 24, 76 S.E. 505 (1912). *See also* 23 Am. Jur. 2d, Dedication § 56; *Cincinnati v. White,* 31 U.S. (6 Pet.) 431, 8 L. Ed. 452 (1832).

[9] The record here discloses no map or plat, nor any sale with reference to any preconceived plan or arrangement. No development plan is referred to in Plaintiffs' Exhibit 1. The simple fact is that Fred Ernul, the owner of a tract of land, sold two land-locked lots from it and the three owners later allegedly executed Plaintiffs' Exhibit 1. This is insufficient to create an easement by dedication, by grant, or by estoppel.

[10] Under the circumstances revealed by the record, our cases establish that plaintiffs have a *way of necessity* by operation of law. "A way of necessity arises when one grants a parcel of land surrounded by his other land, or when the grantee has no access to it except over grantor's other land or land of a stranger. In such cases, grantor impliedly grants a right-of-way over his land as an incident to purchaser's occupation and enjoyment of the grant." 2 Thompson on Real Property, *supra,* § 362; *Lumber Co. v. Cedar Works,* 158 N.C. 161, 73 S.E. 902 (1912) ; *Pritchard v. Scott,* 254 N.C. 277, 118 S.E. 2d 890 (1961) ; *Smith v. Moore,* 254 N.C. 186, 118 S.E. 2d 436. (1961).

[11-13] "When one part of an estate is dependent of necessity, for enjoyment, on some use in the nature of an easement in another part, and the owner conveys either part without express provision on the subject, the part so dependent carries or reserves with it an easement of such necessary use in the other part. . . . [P]roperty owners cannot claim a right-of-way of necessity over the lands of a stranger to their title. However, it is not necessary that the person over whose land the way of necessity is sought be the immediate grantor, so long as there was at one time common ownership of both tracts." 2 Thompson on Real Property, *supra,* § 362; 25 Am. Jur. 2d, Easements and Licenses §§ 34-38. Furthermore, to establish the right to use the way of necessity, it is not necessary to show absolute necessity. It is sufficient to show such physical conditions and such use as would reasonably lead one to believe that the grantor intended the grantee should have the right of access. *Smith v. Moore, supra* (254 N.C. 186, 118 S.E. 2d 436).

[14] Viewed in light of these legal principles, we hold that when Fred Ernul and wife conveyed the two land-locked tracts to

M. L. Mansfield, Jr., and wife Edna, and to Garfield Oliver on 4 June 1954, a way of necessity across the lands retained by Fred Ernul was impliedly granted to said grantees—"a reasonable and convenient way for all parties is thereby implied, in view of all the circumstances." 25 Am. Jur. 2d, Easements and Licenses § 64.

[15] With respect to its location on the ground, "[t]he rule applicable where a general (unlocated) right of way is granted . . . is applicable *to the location* of a way of necessity. 'As in the case of easements generally the rule has been established that the right to select the location of a way of necessity belongs to the owner of the servient estate, provided he exercises the right in a reasonable manner, with regard to the convenience and suitability of the way and to the rights and interests of the owner of the dominant estate.' 17A Am. Jur., Easements § 108." *Pritchard v. Scott, supra* (254 N.C. 277, 118 S.E. 2d 890). *Accord, Andrews v. Lovejoy,* 247 N.C. 554, 101 S.E. 2d 395 (1958) ; *Winston Brick Mfg. Co. v. Hodgin,* 192 N.C. 577, 135 S.E. 466 (1926). However, if at the time a way of necessity was impliedly granted on 4 June 1954 there was in use on the land a way plainly visible and known to the parties, "this way will be held to be the location of the way granted, unless it is not a reasonable and convenient way for both parties." 25 Am. Jur. 2d, Easements and Licenses § 65; 28 C.J.S., Easements § 80; *Eureka Land Co. v. Watts,* 119 Va. 506, 89 S.E. 968 (1916) ; *Labounty v. Vickers,* 352 Mass. 337, 225 N.E. 2d 333 (1967). If controverted at the next trial, whether such way was in use on the land at that time is a jury question.

Judgment of nonsuit was erroneously allowed by the trial court. For the reasons expressed in this opinion, the decision of the Court of Appeals reversing the nonsuit is

Affirmed.

Justice MOORE did not participate in the consideration or decision of this case.

Justice SHARP concurring:

In my view the decision of the Court of Appeals in this case should be affirmed, but not for the reasons advanced in the majority opinion. The instrument upon which plaintiffs base

their claim to an easement over defendants' lot is inartfully drawn; it is obviously the work of a layman, unlearned in the law of conveyancing. Notwithstanding, the purpose and intent of its signatories is clear, and the description of the "20-foot rightaway" they purported to establish is not so vague, indefinite and uncertain that it cannot be located on the ground.

The easement is over property situated in the Mike Ebron subdivision in the Mansfield Section of Morehead township in Carteret County. It is 20 feet wide. It is bounded on the north by the A. & E. C. Railroad; on the east by the line of George Huntley (now Mansfield Mobile Homes); on the south by highway No. 70; and "on the west by Fred Ernul, Garfield Oliver and M. L. Mansfield line." It is apparent that the three lot owners and their respective spouses, who signed the instrument under consideration, envisioned the western line of the 20-foot right-of-way as a new line for their property—an idea which regarded practicality rather than legal technicalities.

"The office of description is to furnish, and is sufficient when it does furnish, means of identifying the land intended to be conveyed." *Self Help Corp. v. Brinkley,* 215 N.C. 615, 620, 2 S.E. 2d 889, 892; *accord, Lane v. Coe,* 262 N.C. 8, 136 S.E. 2d 269; *Light Co. v. Waters,* 260 N.C. 667, 133 S.E. 2d 450. To lay off the right-of-way in question a surveyor would need only to establish the Huntley line and the points where it intersects the rights-of-way of the railroad and the highway. Beginning at the latter point he would run westerly 20 feet with the highway; thence northerly, a line parallel with Huntley to the railroad's right-of-way; thence easterly, with the railroad 20 feet to Huntley's line; thence southerly, with Huntley to the beginning. *Prima facie,* this would be no insurmountable—or even difficult —surveying problem.

When Mansfield, plaintiff Sutton's predecessor in title, plaintiff Oliver, and defendants Ernul executed the instrument which they labeled a "Rightaway Deed" they had no thought of dedicating a 20-foot *public* thoroughfare. Far from it: Oliver and Mansfield were endeavoring to insure for themselves and their successors in title, and any members of the public who had business with them, "for now and forevermore," uninterrupted access to the landlocked lots which they had purchased from the Ernuls. At that time, 19 December 1964, defendants Ernul were acknowledging their obligation to provide means of access

to the landlocked lots which they had sold Oliver and Mansfield. In short, all parties to the agreement were attempting to forestall the very situation which has produced this lawsuit.

The statement in the ninth headnote of *Hine v. Blumenthal,* 239 N.C. 537, 80 S.E. 2d 458, which is quoted in the opinion of the Court of Appeals (9 N.C. App. 221, 223, 175 S.E. 2d 618, 619), is a correct statement of the law applicable to this case. However, the excerpt from the *Hine* opinion, which the Court of Appeals also quoted, is completely irrelevant and confusing. It refers to the rule applicable to the sale of lots in a subdivision by reference to a map showing dedicated streets or highways. As the majority opinion points out, the record here discloses no map and no sales with reference to a map. According to my understanding, it was to clear up any confusion caused by the inclusion of the inapplicable excerpt from *Hine* that we allowed defendants' petition for *certiorari.*

I concur fully in the conclusion of the Court of Appeals that the right-of-way agreement "if proven over defendants' denial," is sufficient to establish a 20-foot easement extending along the Huntley line between the railroad and the highway. If the agreement be proven, any discussion of a way by necessity is beside the point. If it is not established, I agree that plaintiffs would be entitled to a way of necessity.

Chief Justice BOBBITT joins in this concurring opinion.