CONNIE H. JERNIGAN, Plaintiff v. BOBBY B. McLAMB and wife, SONJA McLAMB; ROSEMARY McLAMB HERRING and husband, CARL HERRING; MELANIE LOU McLAMB PATRICK, single; IVA ESTELLE JERNIGAN, single; CAPE FEAR FARM CREDIT; and HENRY T. McDUFFIE, Trustee

No. COA07-1540

(Filed 2 September 2008)

**Easements— by necessity—permissive use**

The trial court erred by denying plaintiff an easement by necessity because: (1) it is not necessary that the person over whose property the easement is sought be the immediate grantor, provided that there was at one time common ownership of both lots, and the evidence supported the trial court's finding that plaintiff and defendant both own lots from the original J.R. Tew property; (2) although plaintiff has permissive use of two routes

to access his property from Highway 55, at least one of which crosses a stranger's property, plaintiff has no legally enforceable access to his property when permissive use may be revoked at any time; and (3) the lack of any legally enforceable access to the property may have a present deleterious impact on the value of the property.

Appeal by plaintiff from judgment entered 11 May 2007 by Judge W. Allen Cobb in Sampson County Superior Court. Heard in the Court of Appeals 11 June 2008.

> *McLeod & Harrop, by Donald E. Harrop, Jr. for plaintiff-appellant.*
>
> *Daughtry, Woodard, Lawrence & Starling, by Luther D. Starling, Jr. and Emily Tomczak for defendants-appellees.*

JACKSON, Judge.

The instant action arose out of a dispute between the parties concerning access to plaintiff's property. Connie Jernigan ("plaintiff") contends that he acquired an easement by necessity, or, in the alternative, an easement by prescription over the property of Bobby McLamb (B. McLamb), Rosemary McLamb Herring, and Melanie Lou McLamb Patrick (collectively, "defendants"). In 1925, the J.R. Tew tract, located in Sampson County, was divided among his six heirs. Four lots from the 1925 Tew division are relevant to plaintiff's appeal: "Lot 1," now owned by defendants; "Lot 4," now owned by plaintiff; "Lot 3," now owned by Iva Jernigan;[1] and "Lot 5".[2] Defendants acquired title to Lot 1 by operation of law on 18 September 1984 from the deceased Mila Rose Bass McLamb[3] (wife to defendant B. McLamb and mother to defendants Rosemary McLamb Herring and Melanie Lou McLamb Patrick), whose father purchased Lot 1 from Roy Tew, the Lot 1 grantee in the 1925 Tew division. Plaintiff acquired fee simple title to the property on 10 December 1999 from his brother, Bobby Jernigan. Bobby Jernigan purchased the property from the heirs of Cora Tew Blackmon, the Lot 4 grantee, on 26 September 1980. Thus, neither plaintiff nor defendants are direct heirs or descendants from the 1925 Tew division.

---

1. The owner of Lot 3, Iva Estelle Jernigan, originally was a party to the action, but was voluntarily dismissed from the suit by plaintiff prior to trial because she granted plaintiff permission to use a farm path across her property as an easement.

2. The owners of this property are not identified in the record.

3. Mila Rose Bass McLamb died intestate.

Lot 1 is a forty-nine point four acre parcel with access to a public road, Jernigan Loop. Lot 1 is situated south of and contiguous to Lot 3—a seventy acre parcel—such that the entire northern border of Lot 1 is part of the southern border of Lot 3. Lot 3 shares a common border with Lot 4—a fifty-three acre parcel—so that the entire southern border of Lot 4 is a common border with the entire northern border of Lot 3. Mingo Swamp borders Lots 3 and 4 on the west side. Lot 4 is bordered on the north by what was Lot 5 of the Tew Division. The evidence tends to show that plaintiff's property does not have direct access to a public roadway.

Plaintiff asserts that in order to access Lot 4, his predecessors in title used a farm path between Jernigan Loop and Highway 55, which crossed Lots 1, 3, 4, and 5, as well as portions of property not part of the original J.R. Tew estate. In order to farm Lot 4, plaintiff and his predecessors in title mainly used the part of the path crossing Lots 1 and 3.

In 1975, B. McLamb built a home in the center of Lot 1. Around 1980, B. McLamb closed part of the farm path across Lot 1 between Jernigan Loop and Highway 55, because when it rained, the farm path would wash out. Approximately twenty-six years ago, B. McLamb built a new driveway to access his house on Lot 1 in a different location—about 200 feet east of the original path—which connected to the remainder of the original path. Plaintiff's predecessors in title and others used B. McLamb's driveway to access the farm path between Jernigan Loop and Highway 55 after it was moved.

In 1999, B. McLamb told plaintiff that he could access Lot 4 by way of Lot 1. However, on 2 June 2002, plaintiff damaged B. McLamb's personal property when B. McLamb attempted to use his truck as a barricade, blocking plaintiff from use of the path. Plaintiff has permissive access to his property via two alternate routes. One of these routes crosses what was apparently Lot 5 of the 1925 Tew division and a portion of property that was not part of the original division.

As a result of defendants' denying plaintiff access across Lot 1, plaintiff brought suit on 16 June 2003 in Sampson County Superior Court, claiming he had acquired an implied easement by necessity, or in the alternative: an easement implied by prior use; an easement by estoppel; or an easement by prescription. In its 11 May 2007 order, the trial court's conclusions of law stated:

(3) Plaintiff has access to his property from Highway 55 and is currently receiving the full use and benefit of his property, and it is not necessary for [p]laintiff to use the [d]efendants' McLamb, Herring, and Patrick (now McLamb) property . . . to have the full fair, convenient, and reasonable, physical, economical, and comfortable use, benefit, and enjoyment of his property.

. . . .

(6) Plaintiff has no claims to defendants' . . . property.

On these grounds, the trial court found that plaintiff did not have an easement over defendants' property. From the trial court's 11 May 2007 order, plaintiff appeals. Specifically, plaintiff challenges the trial court's rulings that he had no right to an easement by necessity, and had not acquired a prescriptive easement.

Plaintiff first argues that the trial court erred in ruling he was not entitled to an easement by necessity. We agree.

Plaintiff claims he is entitled to an implied easement by necessity. Plaintiff specifically argues that Lot 4 and the property in dispute was owned and conveyed by J.R. Tew, that the two current means of permissive access from Lot 4 to public roads are over the property of strangers to his title, and that he has no legally enforceable access to his property.

Our Supreme Court has explained

[a] way of necessity arises when one grants a parcel of land surrounded by his other land, or when the grantee has no access to it except over grantor's other land or land of a stranger. In such cases, grantor impliedly grants a right-of-way over his land as an incident to purchaser's occupation and enjoyment of the grant.

*Oliver v. Ernul*, 277 N.C. 591, 599, 178 S.E.2d 393, 397 (1971) (quotations and citations omitted). Such easements are a " 'result of the application of the presumption that whenever a party conveys property, he conveys whatever is necessity *(sic)* for the beneficial use of that property . . . .' " *Pritchard v. Scott*, 254 N.C. 277, 282, 118 S.E.2d 890, 894 (1961) (quoting 17A Am. Jur., Easements § 58).

To satisfy the elements of an easement by necessity, the claimant must prove that: " '(i) the claimed dominant tract and the claimed subservient tract were once held in common ownership that was severed by a conveyance and (ii) the necessity for the easement arose out of the conveyance.' " *Whitfield v. Todd*, 116 N.C. App. 335, 339,

447 S.E.2d 796, 799 (1994) (quoting *Cieszko v. Clark*, 92 N.C. App. 290, 296, 374 S.E.2d 456, 460 (1988)). The necessity must arise at the time of conveyance from the common grantor. *Broyhill v. Coppage*, 79 N.C. App. 221, 226, 339 S.E.2d 32, 37 (1986) (citing *Smith v. Moore*, 254 N.C. 186, 190, 118 S.E.2d 436, 438 (1961)). It is not necessary that the person over whose property the easement is sought be the immediate grantor, provided that there was at one time common ownership of both lots. *Oliver*, 277 N.C. at 599, 178 S.E.2d at 397.

Absolute necessity need not be demonstrated; physical conditions and use that would lead one reasonably to believe that the grantor intended the grantee to have access are sufficient. *Moore*, 254 N.C. at 190, 118 S.E.2d at 438-39. "Although a plaintiff may have a permissive right-of-way to a public highway, a plaintiff who has no legally enforceable right-of-way to a public highway may be entitled to an easement by necessity." *Whitfield*, 116 N.C. App. at 339, 447 S.E.2d at 799 (citing *Wilson v. Smith*, 18 N.C. App. 414, 418, 197 S.E.2d 23, 25, *cert. denied*, 284 N.C. 125, 199 S.E.2d 664 (1973)).

In *Wilson*, this Court affirmed an award to the plaintiffs of an easement by necessity when they were unable to obtain a deed of trust for the construction of their dwelling because, although they had permissive access to a public road, they had no legally enforceable access, and, as a result, they did not have the "full beneficial use of their property." *Wilson*, 18 N.C. App. at 418, 197 S.E.2d at 26. Further, in *Whitfield*, without requiring the showing of any present economic hardship or loss of use of the plaintiff's property, this Court granted the plaintiff an easement by necessity when the plaintiff only had permissive access to his property. *Whitfield*, 116 N.C. App. at 339, 447 S.E.2d at 799.

In the instant case, the evidence supports the trial court's findings that plaintiff and defendant both own lots from the original J.R. Tew property, that defendants' property abuts a public roadway, and that plaintiff has permissive use of two routes to access his property from Highway 55, at least one of which crosses a stranger's property.

The relevant issue in this case is whether J.R. Tew intended the recipient of Lot 4 to have a right of access to that lot at the time his property was subdivided and distributed to his heirs such that permissive use of access given after the initial division of the property should be irrelevant. *Broyhill*, 79 N.C. App. at 223, 339 S.E.2d at 35. There is no evidence that J.R. Tew intended to deny access to Lot 4 over the other property constituting his original tract. The trial court

made no findings of fact as to whether the routes plaintiff currently uses were in existence at the time of the 1925 Tew division, and therefore, there is no evidence that Tew intended any route of access to Lot 4 other than across some portion of his original tract. Plaintiff has no legally enforceable access to his property, and, though he has permissive use, he is entitled to an easement by necessity. *See Wilson*, 18 N.C. App. at 418, 197 S.E.2d at 26; *Whitfield*, 116 N.C. App. at 339, 447 S.E.2d at 799.

This lack of any legally enforceable access to Lot 4 denies plaintiff the full use and enjoyment of his property, because permissive use may be revoked at any time, subjecting plaintiff to the expense of another lawsuit, and potentially preventing him from deriving the financial benefit he enjoys from farming his property. Further, plaintiff could be subject to the same problems faced by the plaintiff in *Wilson* if he either decides to build upon the property, or sell it. Finally, the lack of any legally enforceable access to the property may well have a present deleterious impact on the value of the property.

We hold that the portion of the trial court's ruling denying plaintiff an easement by necessity is affected by an error of law. We reverse and remand to the trial court for entry of an order consistent with this opinion.

In light of our holding above, it is unnecessary and we do not address plaintiff's second argument.

REVERSED AND REMANDED.

Judges HUNTER and TYSON concur.